IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

PRINCE D. KEY,

                Plaintiff,

v.                                                  OPINION and ORDER

ROBERT SHANNON, JOSEPH CICHANOWICZ,          17-cv-521-jdp
JOSHUA KOLBO, and GARY BOUGHTON,

                Defendants.

Plaintiff Prince D. Key, an inmate at the Wisconsin Secure Program Facility, alleges that defendant prison officials violated his rights by failing to provide him with his medications four times. Key brings claims under the First, Eighth, and Fourteenth Amendments and under a Wisconsin-law negligence theory. Defendants removed the case from state court.

Only days after the court's preliminary pretrial conference, Key filed a motion for partial summary judgment on his Eighth Amendment claims. Dkt. 12. The court granted defendants extra time to file their response but denied their request to extend their deadline all the way to the March 15, 2019 dispositive-motions deadline. Dkt. 24. Because I conclude that Key fails to show that he is entitled to judgment as a matter of law, I will deny his summary judgment motion.

## UNDISPUTED FACTS

I draw the following facts from the parties' summary judgment materials.[1]

Plaintiff Prince D. Key is an inmate at Wisconsin Secure Program Facility (WSPF), located in Boscobel, Wisconsin. Key says that he suffers from ulcerative colitis, a disease causing inflammation in the digestive tract. He also suffers from post-traumatic stress disorder, anti-social personality disorder, and depression. During the events of this case, he was prescribed medications, including duloxetine, promethazine, diphenhydramine, trazodone, paroxetine (Paxil), and mirtazapine.

Defendants contend that Key provides no evidence to show that he suffers from these diseases or that defendants were aware that he suffered from them. But Key has submitted evidence that shows a range of medical problems. Medical records Key attaches to his reply state that he was diagnosed with "focal active colitis," *see* Dkt. 28-1, at 7, so I will assume that he suffers from some type of bowel malady. The fact that he was prescribed medications normally used for treatment of depression or other mental health problems is enough to show that he suffers from some type of mental health problem. It is undisputed that Key was prescribed medication to treat health problems. And he does say in his verified complaint that Correctional Officer Robert Shannon knew about his bowel problems because he called the Health Services Unit several times to alert medical staff about Key passing "a lot" of blood in his stool. *See* Dkt. 1-2, at 5. I take Key to be saying that he was prescribed promethazine to treat pain from his bowel problem.

---

[1] Defendants filed a reply to the proposed findings of fact that they filed in opposition to Key's motion for summary judgment. Dkt. 30. But neither the court's summary judgment procedures nor the briefing schedule here provided an opportunity for defendants to submit such a reply. *See* Dkt. 11-1, at 2–7. So I will disregard that filing.

During the time relevant to this lawsuit, defendant Shannon was assigned the second shift, working from approximately 2 p.m. to 10 p.m. This meant that Shannon was responsible for dispensing the medication to the inmates at "bedtime," one of four "med pass" times in a day.

When it is time for med pass to begin, the unit's control center issues a PA announcement. Defendants say that each inmate with a prescription is expected to use the intercom to confirm that he indeed wants his prescribed medication. Staff members in the control center compile a list of inmates who responded to the PA message. The unit sergeant gives the list to an officer who then retrieves the medication cart. Defendants say that at the time of the events in question, an inmate's failure to respond via intercom meant that the inmate would be considered to have refused his medication. Key says that this procedure was not always followed, and facts below appear to show that prison officials would allow an inmate to later ask for medication in person.

Officers give an inmate medication by putting it in a paper cup and placing it on the ledge of the opened "trap" in the inmate's door. Any time the trap is opened, there is an increased risk to an officer. Particular concerns are that an inmate could attempt to attack an officer with a weapon, or throw urine or feces at the officer. For the safety of staff members conducting the med pass, inmates are required to have their light on and be fully clothed.

On February 21, 2017, defendant Shannon passed out "bedtime" medication to inmates. When Shannon passed by Key's cell, Key told Shannon that he wanted his medication. Shannon reviewed the list of inmates who had replied by intercom; Key was not on the list. So Shannon did not give Key his medication. Key later asked third-shift officers for his medication and they gave it to them. The unit manager told Shannon that even though the

practice had been to mark an inmate's failure to respond as a refusal of medication, staff members should provide the medication if the inmate later requests it.

Key told defendant Sergeant Joshua Kolbo about the denial. Kolbo thought the denial was appropriate because Key did not answer the medication call. Key wrote to defendant Warden Gary Boughton, complaining about being required to respond with the intercom to receive medication. Key also filed an inmate grievance about the denial.

The letter and grievance were resolved much later. The institution complaint examiner recommended that Key's grievance be "affirmed"—in the DOC's parlance, that means that Key should win his grievance—and she stated that although Key should use the intercom to request his medication, "failure to do so should not result in medication denial." Dkt. 1-2, at 18. She said that the unit supervisor spoke to Shannon about the issue. On March 15, 2017, defendant Boughton accepted the recommendation and affirmed the grievance. On March 21, 2017, Boughton responded to Key's February letter, stating, "It is helpful when inmates signal on the intercom they want their medications" and, "when both staff and inmates make an effort to fulfill [medication] service delivery, the outcomes can be much more desirable." Dkt 17, at 2 ¶ 3.

In the month that Key's grievance was pending, there were further incidents regarding med passes. On February 24, 2017, Key was wearing a "du-rag" head covering when Shannon came by to pass out medication. Shannon says that he believed at the time that it was a requirement for all inmates to remove their du-rags during med pass, for safety reasons—the concern was than an inmate could be hiding a weapon or other harmful material with which the inmate could harm the officer while the trap was open. Key says that wearing a du-rag was not actually against the rules. Key also says that Shannon told him that "since people want to

complain, now we're following all the rules." Key removed his du-rag and Shannon gave him his medication. Key filed a grievance that was rejected as not raising a significant issue. The parties dispute whether Boughton reviewed that rejection.

On March 17, 2017, defendant Shannon again initially would not give Key his medication because he was wearing a du-rag. Key showed Shannon a copy of the inmate handbook, which did not contain that requirement. Shannon says that nevertheless, he was suspicious that Key's refusal meant that he may be hiding something dangerous. Key removed his du-rag and Shannon gave him his medication.

Shannon requested that the sergeant on duty contact a supervisor. Defendant Joseph Cichanowicz was a supervisor that day. Key says that Cichanowicz told the sergeant that Shannon was correct to ask him to remove his du-rag when the door trap was open. Shannon says that Cichanowicz met with him to tell him that the policy to have inmates remove their du-rags applied only in the Restrictive Housing Unit, and not the general population unit that Key was in. But Shannon also says that officers always retain the right to give inmates orders to remove a head covering for safety reasons. Key filed a grievance that was rejected as insignificant because Shannon received his medication that day. Key appealed and Boughton approved the rejection.

On March 24, 2017, Shannon and Key had another disagreement about his medication. By that time, Shannon was aware that there was no policy requiring general-population inmates to remove head coverings for med pass. At the med pass time, Key was again wearing a du-rag. Shannon says that to avoid further "commotion," rather than have Key remove the du-rag, he told Key to stand in the middle of his cell, so that Key could not reach the trap. Shannon says that Key stood in the middle of the cell, and he dispensed the medication to Key. Key says that

5

another officer, not Shannon, gave him his medications. Key does not say whether this happened during or after Shannon's med pass. Key filed a grievance about this incident that was rejected by the complaint examiner as an issue that was previously addressed. Defendant Boughton approved that rejection.

ANALYSIS

Key has filed a motion for partial summary judgment on his Eighth Amendment claims. To succeed on his motion, Key must show that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broad. Grp., Inc.*, 414 F.3d 686, 692 (7th Cir. 2005). All reasonable inferences from the facts in the summary judgment record must be drawn in the nonmoving party's favor. *Baron v. City of Highland Park*, 195 F.3d 333, 338 (7th Cir. 1999).

The Eighth Amendment prohibits prison officials from acting with deliberate indifference to prisoners' serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). A "serious medical need" is a condition that a doctor has recognized as needing treatment or one for which the necessity of treatment would be obvious to a lay person. *Johnson v. Snyder*, 444 F.3d 579, 584–85 (7th Cir. 2006). A medical need is serious if it is life-threatening, carries risks of permanent serious impairment if left untreated, results in needless pain and suffering, significantly affects an individual's daily activities, *Gutierrez v. Peters*, 111 F.3d 1364, 1371–73 (7th Cir. 1997), or otherwise subjects the prisoner to a substantial risk of serious harm. *Farmer*, 511 U.S. at 847. To be considered "deliberately indifferent," an official must know of and

disregard "an excessive risk to an inmate's health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Snipes v. Detella*, 95 F.3d 586, 590 (7th Cir. 1996). However, inadvertent error, negligence, gross negligence, and ordinary malpractice are not cruel and unusual punishment within the meaning of the Eighth Amendment. *Vance v. Peters*, 97 F.3d 987, 992 (7th Cir. 1996).

Key brings Eighth Amendment claims about four med pass incidents. For the first incident, on February 21, 2017, it is undisputed that Shannon did not give Key his medications during their interaction. The parties appear to agree that Key received medication from the third-shift staff, presumably hours later. It's unclear whether this means that third-shift staff gave Key his "bedtime" doses that Shannon denied him, or whether they gave him his next scheduled doses. Regardless, Shannon's denial of medications could conceivably support an Eighth Amendment claim for an unreasonable delay in Key receiving those medications. Shannon, apparently, contends either (1) that the denial was appropriate because Key failed to follow policy by "opting in" to receive his scheduled medication by stating so over the intercom; or (2) that Shannon mistakenly thought that he was following prison policy by enforcing the intercom requirement.

Because Key's grievance was affirmed and Shannon was instructed not to enforce an intercom requirement, I reject Shannon's contention that the denial was appropriate under prison policy. But even if Shannon violated prison policy, that does not mean that Shannon violated Key's Eighth amendment rights. A reasonable jury could conclude that Shannon's decision was due to his mistaken belief about prison policy and not the result of deliberate indifference on his part.

Key also says that Shannon denied him medication three more times, on February 21, March 17, and March 24, 2017. But it is unclear whether Shannon actually refused to give Key the medication on those days. Based on one view of the evidence, it seems that Shannon ultimately gave Key the medication, but forced him to do something—take off his du-rag or stand in the middle of the cell—before doing so. But for purposes of the summary judgment motion, the distinction does not matter. Even if Key means to say that Shannon did not give him the medication at all, Shannon's version of the facts is enough to create a dispute of material fact. Shannon says that he gave Key the medication all three times after Key complied with his directives. Defendants' version is enough to defeat the summary judgment motion: a reasonable jury could conclude that Shannon was not deliberately indifferent to Key's medical problems because he gave him his medications by the end of their encounters.

In his briefing, Key says little about his claims against the other three defendants, none of whom were directly involved in any of the four incidents. Because I am denying Key's motion for partial summary judgment on the Eighth Amendment claims against Shannon, I will also deny the motion regarding the other defendants. If Shannon did not act with deliberate indifference toward Key's rights, none of the other defendants, who were only indirectly involved, could be held liable either.

Defendants do not ask for summary judgment in their favor other than to raise a qualified immunity defense on the Eighth Amendment claims. But the Court of Appeals for the Seventh Circuit has warned against applying qualified immunity in Eighth Amendment cases because the merits of those claims and qualified immunity "effectively collapse into one" question in many circumstances. *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002). Because the legal standard for Eighth Amendment medical care claims is well established and

the disputes raised regarding such claims are largely factual rather than legal, "[i]f there are genuine issues of fact concerning th[e] elements [of the claim], a defendant may not avoid trial on the grounds of qualified immunity." *Id.*; *see also Estate of Clark v. Walker*, 865 F.3d 544, 553 (7th Cir. 2017) ("The Supreme Court has long held that prisoners have an Eighth Amendment right to treatment for their 'serious medical needs.' For purposes of qualified immunity, that legal duty need not be litigated and then established disease by disease or injury by injury."). So defendants are not entitled to summary judgment by way of qualified immunity.

Whether defendants end up filing their own motion for summary judgment before the March 15 deadline, or the case goes to trial, Key will not succeed by vaguely stating that Shannon denied him medication. Key will need to explain exactly when Shannon did or did not give him medication, and how he was harmed by any delay in receiving medication. He will also need to explain how the facts support each of his various legal theories be brings in addition to the Eighth Amendment claims.

ORDER

IT IS ORDERED that plaintiff Prince D. Key's motion for partial summary judgment, Dkt. 12, is DENIED.

Entered February 7, 2019.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge